IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| SUGAR VALLEY CAPITAL PARTNERS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 3:18-CV-87 (CAR) |
| | : | |
| SAFE HARBOR EQUITY DISTRESSED DEBT FUND 1, LP, and UMB BANK, N.A., | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER ON SAFE HARBOR'S MOTION FOR SUMMARY JUDGMENT

Defendant Safe Harbor Equity Distressed Debt Fund 1, LP ("Safe Harbor") filed a Motion for Final Summary Judgment seeking judgment on Plaintiff Sugar Valley Capital Partners, LLC's ("Sugar Valley") claims, and judgment on Defendant UMB Bank, N.A.'s ("Trustee") cross-claim for the Court to declare Safe Harbor the owner of the bonds at issue in this case and direct the Trustee, as bond registrar, to register those bonds in Safe Harbor's name. Both Sugar Valley and the Trustee filed responses opposing the Motion. Having carefully considered the parties' arguments, the record, and applicable law, the Court **GRANTS** Safe Harbor's Motion [Doc. 42].

## LEGAL STANDARD

Summary judgment is proper if the movant "shows that there is no genuine issue

as to any material fact and the movant is entitled to a judgment as a matter of law."[1]  Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.[2]  This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3]

On summary judgment, the Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party; the Court may not make credibility determinations or weigh the evidence.[4]  The moving party "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[5]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence creates a genuine issue of material fact or that the moving

---

[1] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[3] *See id.* at 249-52.

[4] *See id.* at 254-55; *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

[5] *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

party is not entitled to a judgment as a matter of law.[6]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[7]

## BACKGROUND

The Court detailed the pertinent facts and procedural background of this case in its previous Order denying Safe Harbor's Motion for Partial Summary Judgment entered on July 31, 2019.[8] The following background is relevant to the Motion currently at bar.

Sugar Valley filed this action to recapture its interest in certain bonds issued by the Greene County Development Authority that Sugar Valley had pledged ("Bonds") to secure a 1,700,000.00 loan ("$1.7M Loan") from Safe Harbor to Glen-I, LLC ("Glen"). After Glen defaulted on the $1.7M Loan, Safe Harbor held a sale and purchased the Bonds. Sugar Valley claims the sale was usurious and seeks declaratory relief, replevin based on alleged conversion, surplus damages, and attorneys' fees. Sugar Valley named UMB Bank, N.A. as a Defendant because it is the Trustee and registrar under the Trust Indenture dated August 1, 2015, ("Indenture") that governs the Bonds. The Trustee raised a counterclaim against Sugar Valley and a cross-claim against Safe Harbor asking this Court to declare the rightful owner of the Bonds to ensure the Bonds will be registered in the name of the Bonds' actual owner.

After Safe Harbor purchased the Bonds, it made a demand on the Trustee to

---

[6] *See* Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324-26.

[7] *Avirgnan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

[8] Doc. 45.

register the Bonds in Safe Harbor's name. Thereafter, Sugar Valley sought a court order to prevent registration of the transfer of the Bond. On June 11, 2018, Sugar Valley filed a complaint and an emergency motion seeking a temporary restraining order and preliminary injunction with respect to the Bonds against Safe Harbor and the Trustee in the Superior Court of Greene County, which Safe Harbor removed to this Court. This Court denied the motion for preliminary injunction, finding Sugar Valley had failed to establish irreparable harm.

On September 1, 2019, Safe Harbor and Sugar Valley entered into a Settlement Agreement (the "2019 Agreement") "in order to, among other things, avoid the time and expense of litigation, and fully and finally resolve any and all matters between them."[9] Sugar Valley agreed to pay Safe Harbor $75,000 "[b]y no later than September 30, 2019, . . . as payment in full of any and all claims Safe Harbor or its successors and assigns has or may claim against all Parties to this 2019 Agreement, with time being of the essence."[10] Safe Harbor agreed that "[u]pon receipt of the [$75,000] payment" it would "disclaim any interest in and to the Georgia Bonds, rescind any assignments or other transfer of the Georgia Bonds as legal nullities, and inform the bond trustee that it has no interest in the Georgia Bonds, and that the Georgia Bonds are owned solely by [Sugar Valley]."[11]

In a separate provision, Sugar Valley admitted liability and waived all of its

---

[9] 2019 Agreement, Serrano Decl., Ex. A, Doc. 46-2, p. 17.
[10] Id. at ¶ 5.
[11] Id. at p. 18, ¶5.

defenses and claims against Safe Harbor, specifically including the claims in this action:

> **7. <u>Admission of Liability and Waiver of Defenses.</u>** [Sugar Valley] . . . expressly, knowingly, voluntarily, and irrevocably admit[s] that: (a) Glen breached the Original Loan Documents and the $1.7M Loan Documents by, *inter alia*, failing to timely and fully pay the amounts due thereunder; (b) the Original Loan Documents were defaulted obligations at the time of the $1.7M Loan, were not usurious at inception or as modified, amended, or restated; (c) . . . [Sugar Valley] . . . further (i) voluntarily, knowingly, and irrevocably waive[s] any and all claims, counterclaims, actions, judgments, affirmative defenses, and defenses that [it has] raised, or could have raised in connection with the Original Loan Documents, the $1.7M Loan Documents, . . . the GA State Court Action, and the GA Litigation, and any all documents and instruments executed in connection therewith, including, without limitation, all claims and defenses based on usury, estoppel, standing, unconscionability, and any other legal and equitable defenses and claims, raised or which could have been raised, whether known or unknown; . . . and (iii) forever release[s] Safe Harbor . . . from any and all claims [it] had or may have had from the beginning of time up to and including the date of this 2019 Agreement, whether known or unknown, and whether raised or could have been raised . . . .

Sugar Valley also released Safe Harbor from any and all claims and causes of action

arising out of the Bonds, specifically including the claims in this action:

> **9. <u>Releases.</u>** (a) . . . [Sugar Valley] . . . hereby knowingly, voluntarily, and irrevocably waive[s] and release[s] . . . [Safe Harbor] . . . from any and all claims and causes of action of any nature or type, whether known or unknown, arising out of or which could have arisen out of, or which are related in any way to the Loan, the $1.7M Loan, the Original Loan Documents, the $1.7M Loan Documents, . . . the Georgia Bonds, . . . the GA Litigation, the GA State Court Action, . . . and any other documents and agreements entered into connection therewith. . . .

The 2019 Agreement defines "GA State Court Action" and "GA Litigation" as follows:

> [Sugar Valley] filed a lawsuit in the Superior Court of Greene County, Georgia (the 'GA State Court Action'), which case was removed to federal

district court of the middle district of Georgia (Athens Division) under case no. No. [sic] 3:18-CV-87-CAR (the 'GA Litigation')."

Sugar Valley did not pay the $75,000 to redeem the Bonds, and Safe Harbor filed the current Motion for Summary Judgment seeking judgment on Sugar Valley's claims based on Sugar Valley's admission of liability, waiver of defenses, and release of all claims in this action in the 2019 Agreement. In addition, Safe Harbor seeks summary judgment on the Trustee's cross-claim for the Court to declare Safe Harbor the owner of the Bonds and direct the Trustee register the Bonds in Safe Harbor's name.

## DISCUSSION

Summary Judgment against Sugar Valley

The Court finds that Sugar Valley's claims against Safe Harbor in this action are precluded by Sugar Valley's release in the 2019 Agreement. The parties selected New York law to govern the 2019 Agreement.[12] "When interpreting a contract [under New York law], the 'intention of the parties should control, and the best evidence of intent is the contract itself.'"[13] "At the outset, the court must determine whether the language the parties have chosen is ambiguous."[14] A contract is unambiguous if its "language has a definite and

---

[12] *Id.* at p. 21, § 16 ("The Parties agree that any dispute arising out of this 2019 Agreement shall be governed by New York law.").

[13] *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013); *see also Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985) ("As a general matter, the objective of contract interpretation is to give effect to the expressed intentions of the parties.").

[14] *Gary Friedrich Enters.*, 716 F.3d at 313 (quoting *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) ); *see also JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009); *Alexander & Alexander Serv., Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998) ("Under New

precise meaning ... concerning which there is no reasonable basis for a difference of opinion."[15] "[T]he language of a contract is not made ambiguous simply because the parties urge different interpretations," nor "does ambiguity exist where one party's view strains the contract language beyond its reasonable and ordinary meaning."[16] "In interpreting an unambiguous contract, the court is to consider its [p]articular words not in isolation but in the light of the obligation as a whole and the intention of the parties as manifested thereby ... but the court is not to consider any extrinsic evidence as to the parties' intentions."[17]

The 2019 Agreement is unambiguous. Under its plain terms, Sugar Valley waived and released Safe Harbor from any and all defenses and claims it raised or could have raised in this action when it signed the 2019 Agreement. Pursuant to the contract, Safe Harbor granted Sugar Valley the option of redeeming the Bonds for $75,000 if it received such amount by September 30, 2019, in exchange for Sugar Valley's unconditional release and waiver of its claims against Safe Harbor, specifically including the claims in this

---

York law the initial interpretation of a contract is a matter of law for the court to decide," including "the threshold question of whether the terms of the contract are ambiguous.") (internal quotation marks and citation omitted).

[15] *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (quoting *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (internal quotation marks omitted)).

[16] *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 598 (2d Cir. 2005) (quoting *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)) (internal quotation marks and alterations omitted).

[17] *Id*. (citations and internal quotation marks omitted); *see also In re AMR Corp.*, 730 F.3d 88, 98 (2d Cir. 2013) ("[C]ourts applying New York law construe a contract 'so as to give full meaning and effect to all of its provisions.'") (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996)).

action. Although Sugar Valley failed to exercise its option, it nonetheless waived and released its claims in this action.

Sugar Valley points to section 2 of the 2019 Agreement which states, in relevant part:

> **2. Approval by the Court and Dismissals With Prejudice.** . . . By not later than September 30, 2019, but not before paying to Safe Harbor the $75,000 due hereunder, [Sugar Valley] shall file an agreed motion in the GA Litigation requesting the Court declare [Sugar Valley] owner of the bond and dismissing with prejudice of the GA Litigation, with a proposed order voluntarily dismissing the GA State Court Action and the GA Litigation with prejudice and declaring [Sugar Valley] the owner of the bonds, with the parties agreeing to bear their own fees and costs. In the event that [Sugar Valley] fails to do so, the parties authorize Safe Harbor to file the agreed motion, proposed order, and notice of dismissal with prejudice in the GA Litigation in accordance with the 2019 Agreement.

Sugar Valley argues that pursuant to this section, Safe Harbor's remedy upon Sugar Valley's failure to pay the $75,000 required to redeem the Bonds from Safe Harbor is for Safe Harbor to move this Court for an order declaring Sugar Valley the owner of the Bonds and then file an action in Florida to enforce the settlement and obtain a monetary judgment. Sugar Valley's argument is without merit.

Section 2 of the 2019 Agreement merely permits Safe Harbor to file a motion to dismiss this action and declare Sugar Valley the owner of the Bonds if Sugar Valley exercised its option and paid the $75,000 to redeem the Bonds and did not move to dismiss itself. Nothing in section 2 limits the effects of Sugar Valley's release and waiver provisions or the options Safe Harbor could pursue if Sugar Valley failed to exercise its

option.  Thus, because Sugar Valley waived and released all claims and defenses in this action under the 2019 Agreement, Safe Harbor is entitled to summary judgment.

Summary Judgment against the Trustee

The Indenture governs the characteristics of the Bonds and scope of the rights and responsibilities of the Issuer and the Trustee, including the requirements necessary for the Trustee to register a transfer of the Bonds. [18] For the Trustee to register a transfer, the holder must prove it is the owner of the Bonds by surrendering the original bond certificate with a written instrument of transfer.[19] Safe Harbor has informed the Trustee that it cannot locate the original certificate. Instead, Safe Harbor contends it has lost the original certificate.

If the bond certificate has been mutilated, lost, stolen, or destroyed, "the Trustee (upon the receipt of a written authorization from the Issuer) may authenticate and deliver a new Bond . . . provided that . . . in the case of any lost . . . Bond, there shall be first furnished to the Trustee evidence satisfactory to it of the ownership of such Bond

---

[18] Indenture, p. 4. [Doc. 43-2, p. 17] ("[I]t is expressly declared that all Bonds issued and secured hereunder are to be issued, authenticated and delivered and all property hereby given, grated, assigned or pledged is to be dealt with and disposed of under, upon and subject to the terms, condition, stipulations, agreements, trusts, uses and purposes as hereinafter expressed. . . .").

[19] *Id.* at 56, § 2.07. [Doc. 43-2, p. 68-9] ("Bonds may be transferred on the books of registration kept by the Trustee by the holder in person or by his duly authorized attorney, upon surrender thereof together with a written instrument of transfer executed by the holder or his duly authorized attorney. . . . Subject to the foregoing provisions of this Section 2.08 regarding beneficial owners of the Bonds, the person in whose name any Bond shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes[.]").

and of such loss . . . together with indemnity satisfactory to it. . . ."[20]

Safe Harbor's ownership of the Bonds is no longer in dispute. In the 2019 Agreement, Sugar Valley agreed that the Settlement Agreement executed by Glen in 2017 (the "2017 Agreement") was and is valid and binding.[21] Pursuant to the recitals in the 2017 Agreement, Safe Harbor extended the $1.7M Loan to Glen that was secured by Sugar Valley's interest in the Bonds; Glen defaulted under the terms of the $1.7M Loan, and Safe Harbor was thus entitled to hold a sale of the Bonds; Safe Harbor held a sale and successfully purchased the Bonds thereby becoming the Bond's rightful owner.[22]

The Trustee states that Safe Harbor has not evidenced that it is the holder of the Original Certificate;[23] it "has no information or knowledge as to whether Safe Harbor ever possessed, or subsequently lost the Original Certificate";[24] and "[t]o date, Safe Harbor has not satisfied the requirements under section 2.07 and 2.08 of the Indenture and applicable law to effectuate a transfer of the Series 2015C Bonds to Safe Harbor in the absence of the Original Certificate."[25]

Rafael Serrano on behalf of Safe Harbor, however, has provided a declaration wherein he avers that "Safe Harbor does not have possession of the original [Bond] because, upon information and belief, Safe Harbor ha[s] [ ] lost the original Bond, and its

---

[20] *Id.* at § 2.08.
[21] 2019 Agreement, Serrano Decl., Ex. A, Doc. 46-2, p. 16.
[22] 2017 Agreement, Serrano Decl., Ex. B, Doc. 46-2, pp. 27-31.
[23] Wilkinson Decl., p. 2, ¶ 6 [Doc. 50-2].
[24] *Id.* at ¶ 7.
[25] *Id.* at ¶ 9.

whereabouts cannot be determined."[26] He states that Safe Harbor has offered to satisfy the conditions of the Indenture authorizing UMB to reissue the certificate.[27] "Specifically, Safe Harbor has offered to indemnify UMB 'for any harm the trustee sustains as a result of that loss of possession if the bond is re-issued' and 'pay the costs, if any, associated with re-issuing the bond.'"[28] The Trustee offers no explanation why these declarations do not satisfy the Indenture's requirements. Thus, the Court finds the Trustee must register the Bonds in Safe Harbor's name, and Safe Harbor must indemnify the Trustee for any harm it sustains in re-issuing the Bonds and pay the costs, if any, associated with re-issuing the Bonds.

## CONCLUSION

For the foregoing reasons, Safe Harbor's Motion for Summary Judgment [Doc. 42] is **GRANTED**. The Court hereby **DECLARES** Safe Harbor the owner of the Bonds and **DIRECTS** the Trustee to register the Bonds in Safe Harbor's name, with the conditions that Safe Harbor must indemnify the Trustee for any harm it sustains in re-issuing the Bonds and pay the costs, if any, associated with re-issuing the Bonds.

**SO ORDERED**, this 27th day of August, 2020.

s/C. Ashley Royal_____
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[26] Serrano Decl., p. 4, ¶ 24 [Doc. 53-1].
[27] *Id.* at ¶ 27.
[28] *Id.* at ¶ 28.